IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| AIDA GONZALEZ, INDIVIDUALLY, § <br> AND AS NEXT FRIEND OF ROGELIO § <br> GONZALEZ § <br> § <br> v § <br> § <br> § <br> CITY OF MISSION § | | CIVIL ACTION NO. _____ <br> (JURY REQUESTED) |

## PLAINTIFFS' ORIGINAL COMPLAINT
## & JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Aida Gonzalez, Individually, and as Next Friend of Rogelio Gonzalez ("Plaintiffs") file this Plaintiffs' Original Petition, and would respectfully show:

### - INTRODUCTION -

This action for money damages arises from personal injuries sustained by Rogelio Gonzalez, a person with developmental disabilities. Rogelio was arrested for alleged theft of Prestone antifreeze valued at $10.38. He was booked and detained inside the City of Mission jail. Mr. Gonzalez walked into City of Mission jail, but he exited in a wheelchair en route to a local hospital.

### PARTIES

1. **AIDA GONZALEZ** ("Ms. Gonzalez" or "Plaintiff") is a natural person residing in Mission, Texas. She is the biological mother of Rogelio Gonzalez. She is Mr. Gonzalez's caretaker.

2. **ROGELIO GONZALEZ** ( "Rogelio" or "Plaintiff") is a natural person residing in Mission, Texas. He suffers from some developmental disabilities. He is cared for by him mother.

3. Defendant, **CITY OF MISSION** (hereinafter referred to as "Defendant" or "City") is local government entity and can be served with process by serving its City Secretary at the following address:

> Anna Carrillo, City Secretary
> 1201 E. 8th Street
> Mission, TX 78572

### JURISDICTION

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343 because Plaintiffs are suing under 42 U.S.C. §1983; 42 U.S.C § 12131 (ADA Title II), and 29 U.S.C. § 794.

### VENUE

5. The acts giving rise to this claim occurred in Mission, Hidalgo County, Texas. Jurisdiction and venue are proper in U.S. Southern District of Texas - McAllen Division.

### PROCEDURAL HISTORY

6. Seeking to learn the sequence of events that caused Rogelio to be in the McAllen Medical Center's ICU, Ms. Gonzalez filed a Petition to Investigate in the County Courts at Law of Hidalgo County. Rather than submit officers to depositions, the City offered documents. There were two groups of documents produced by the City (A) nine (9) pages reflecting the City of Mission's arrest/ booking and dropped charges against Rogelio for the incident made the basis of this lawsuit of December 5, 2022; and (B) nine (9) pages

reflecting Rogelio, a pedestrian, was the victim of a drunk driver in December 4, 2021. Ironically, there is a better developed narrative concerning Rogelio's injuries and surgery in the B group of documents than for the incident at issue in this lawsuit.

7.      Based on information and belief, there should  video/digital recordings of Rogelio inside the Mission lockup.

## FACTS

8.      Rogelio Gonzalez was born in September 1977.  Despite being in mid-to-late 40's, Rogelio has the intellect of an eight year old.  He was diagnosed with mild retardation at age three.  Later, at age fifteen, he was diagnosed as bi-polar and slightly autistic.  His nickname is "Roy."

9.      Immediately upon meeting Rogelio, a person can see Rogelio's demeanor is consistent with the behavior of a person with disabilities - intellectual/mental disabilities. He is friendly, but cannot keep a conversation.  He has speech and hearing problems.  He often makes awkward movements with his head - a tick.  He cannot maintain eye contact. He takes Ceprexa for schizophrenia and other medications for diabetes and hypertension. Rogelio agrees with everything a person tells him, especially if they are Dallas Cowboys football fans.  Rogelio is the biggest fan of the Dallas Cowboys.

10.     Mission police officers and jailers knew Rogelio.  They also knew of his mental health illness and developmental deficits before December 5, 2022.   Mission police officers have been called to Wal-Mart on two or three occasions  before December 2022. During those occurrences, Rogelio was caught by Wal-Mart employees trying to steal or

stealing items valued at less than $10.00. The most recent incident occurred some time in 2021.

11. Rogelio lives less than a 1/4 mile from a Wal-Mart known as "Little Wal-Mart" by Mission residents.

12. Based on information and belief (despite having a Texas driver's license), Rogelio walked to the Little Wal-Mart at around the 9 o'clock a.m. hour.

13. At approximately 10:30 a.m., he is arrested by Mission P.D. at Little Wal-Mart and taken to the Mission PD lockup.

14. Based on information and belief, Mission police officer Ricardo Cardoza placed Rogelio inside a cell.

15. Based on information and belief, Rogelio was alone in the cell.

16. Ms. Gonzalez called Mission PD at around 3:30 p.m. to report Rogelio was missing.

17. Based on information and belief, at some point before 5 p.m. that Tuesday, December 6th, the City of Mission dropped all charges against Rogelio.

18. Mission PD calls Rogelio's family, requesting they pick him up for "time served."

19. Jacqueline, a family member, arrived at Mission PD to pick up Rogelio. She calls the police department, and a jailer tells her that she will have to go inside the PD to pick up Rogelio. After waiting inside the jail for approximately 10-15 minutes, Roy comes out. He is getting wheeled out in a wheelchair. Jacqueline notices Rogelio has dry blood on his knuckles. He has scratches on his head. Rogelio is stiff.

20. Jacqueline calls Mission PD from her mobile home and requests an ambulance.

21. Jacqueline did not take Rogelio out of the Mission PD jail.

22. Paramedics arrived to take Rogelio, who was at all times relevant inside the Mission PD. A paramedic asked Rogelio questions, but Rogelio was in shock. He would not move. He would only say that his back hurt.

23. Paramedics placed Rogelio on a stretcher inside a red and yellow ambulance.

24. Roy was taken to Mission Hospital.

25. At Mission Hospital, Ms. Gonzalez learned that Rogelio was throwing up very dark blood - like the color of coffee grounds. He is bleeding internally. Rogelio does not have a history of self harm.

26. An emergency room doctor at Mission Hospital asks Ms. Gonzalez for permission to transfer Rogelio to McAllen Medical Center.

27. At McAllen Medical Center, Rogelio undergoes several surgeries, including for injuries to his pelvis, hip and left knee. He is intubated and taken to ICU. He also received a blood transfusion.

28. Police Chief Cesar Torres was the policymaker for the City of Mission Police Department and Jail/Lockup with respect to the Mission jail at the time of Rogelio's injuries, resulting from the Mission jail's unconstitutional policies, customs and practices.

29. Based on information and belief, Mission Police Chief called a doctor at Mission Hospital.

30. Based on information and belief, Mission Police Chief called a doctor at McAllen Medical.

31. Based on information and belief, Mission police personnel go to McAllen Medical Center, offering to pay for all of the medical bills associated with Rogelio's care.

32. Mission jail's culture of violence and policies, practices, and customs of failing to observe and monitor detainees, provide timely and adequate medical care, institutionalized excessive force by jail employees on detainees, and systemic understaffing of the jail were the direct cause and moving force of Rogelio's injuries.

33. Mission jailers left Rogelio in the cell alone, languishing in pain. At some point, a female jailer told Ms. Gonzalez that Rogelio "no esta bien."

34. Based on information and belief and despite knowing his developmental deficits, Mission jailers did not conduct consistent or timely observations or monitoring of Rogelio.

35. Based on information and belief and despite knowing his developmental deficits, Mission jailers placed Rogelio in a single person cell despite knowing the adverse psychological damage caused by solitary confinement.

36. The repeated, extensive, and pervasive acts and omissions of constitutional violations inside the Mission PD jail give rise to multiple official policies, practices, City's policies, practices, culture and customs which serve as the basis of the following causes of action below.

37. The policies include but are not limited to the following:

   (a) **Failure to observe and monitor**: Routine failures to properly observe and monitor detainees, like Rogelio, through face-to-face checks, video monitoring, and in identifying monitoring blind spots within the jail as well as inaccurate reporting and documentation of those observations.

   (b) **Failure to provide Medical Care**: Routine failure to provide detainees, like Rogelio, with medical care and/or sufficient medical care within a timely

manner or at all through the failure to provide medications to detainees, failure to follow medical instructions from medical professionals, failure to document health concerns and medical needs of detainees, failure to properly evaluate and test detainees, like Rogelio, with known injuries in reckless disregard to the known consequences of failing to test and diagnose injuries and medical conditions, and failure to transfer detainees with known or knowable medical conditions to a medical facility that could provide adequate acute care for detainees with disabilities and medical conditions.

(c) **Excessive Force by Jail Employees on Detainees**: Patterns, practices, policies and culture of encouraging and failing to deter the use of force by jail employees;

    (I.) By creating a culture that quickly escalates violence towards detainees;

    (ii.) Insufficient training and enforcement of non-physical de-escalation techniques;

    (iii.) Policy of officers and jailers utilizing excessive force to silence detainees;

    (iv) Inaccurate documentation of the use of force, falsity of documents by omissions, failure to investigate allegations of use of force;

    (v.) Resorting to use of force to punish detainees.

(d) **Systemic Understaffing**: Routine understaffing promotes violence between detainees and jailers, impedes detainees' access to medical care, reduces supervision of detainees in a safe manner, reduces face-to-face observations and increases the likelihood of harm suffered by detainees.

(e) **Failure to Train**: inadequate training policies and procedures for police officers and jailers in order to identify persons with mental health issues or undergoing mental health crises.

38. It is ironic that, on December 6, 2022, when Rogelio was in surgery repairing broken bones, including his left kneecap, hip and pelvis, the City of Mission was having a Mental Health Awareness Day which it advertised locally (The Monitor, KRGV, and Facebook.)

### Count 1: Monell Claim; Conditions of Confinement/42 U.S.C. 1983/ 14th Amendment

39. Plaintiffs incorporate and re-allege all preceding paragraphs as though fully pleaded herein.

40. Plaintiffs bring claims under 42 U.S.C. 1983 against Defendant, City of Mission, for violations of Rogelio Gonzalez's 14th Amendment rights.

41. Plaintiffs invoke the conditions of confinement theory for the injuries of Rogelio Gonzalez which require a showing of (1) an official policy; (2) a policymaker; and (3) that the policy was the moving force behind the constitutional violation.

42. City of Mission's acts and omissions, which resulted in Rogelio Gonzalez's injuries, were committed pursuant to one or more interrelated policies, practices, and customs of the City of Mission that were promulgated by its policymaker, the Chief of Police, and which

resulted in conditions, practices, rules and restrictions imposed on detainee, Rogelio Gonzalez, that amounts to punishment in advance of trial.

43. The Court is not required to consider each policy in a vacuum but may consider the interrelation of multiple polices and practices at the City of Mission and how each policy may exacerbate the harmful effects of each policy.

44. The City of Mission's policies, practices, and customs were the "moving force" behind the violation of Rogelio Gonzalez's constitutional rights.

45. Plaintiff, Rogelio Gonzalez's injuries were caused by numerous policies, practices and customs of the City of Mission. Those policies have been identified above and constitute a condition of confinement that amounts to punishment. These policies were the "moving force" behind the past and future injuries sustained by Plaintiff, Rogelio Gonzalez.

46. The City of Mission's policies were persistent, widespread practices of municipal officials and employees which were so common and well settled that they constitute a custom within the City, rising to a level of a City policy.

47. For some time now, this persistent, widespread practice has extended unimpeded and lead to Rogelio Gonzalez's injuries.

48. The City of Mission's policies, practices, and customs, singularly or taken together, of failing to provide medical care and medications to Plaintiff Rogelio Gonzalez for known medical needs, the failure to provide proper observation and monitoring of Plaintiff Rogelio Gonzalez in order to provide timely medical care, the understaffing of the Mission jail which

impeded Rogelio Gonzalez's access to medical and reduced the jailers ability to observe Plaintiff Rogelio Gonzalez was the moving force behind Plaintiff's severe injuries.

49. Absent these policies, practices, and customs, the City of Mission would have or should have provided proper medical care, proper observation and monitoring, and would have had sufficient staff, preventing Plaintiff's severe injuries.

50. It was highly predictable that City of Mission would follow these ongoing policies and practices. The known and obvious consequences of the City of Mission's policies and practices identified above is that detainees, like Rolando Gonzalez, would suffer sever injuries and possibly death.

51. The City of Mission acted with deliberate, callous, conscious, and unreasonable indifference to Rogelio Gonzalez's constitutional rights by being aware of the known and obvious consequence of their policies and practices but continuing to authorize, tolerate and ratify the implementation of the custom and practice resulting in Rogelio Gonzalez's injuries.

### Count 2: Monell Claim 42 U.S.C. 1983/14th Amendment
### Failure to Train or Supervise

52. Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

53. Plaintiffs bring claims based on the City of Mission's deliberate failure to train and/or supervise their jail personnel which resulted in the violation of Rogelio Gonzalez's constitutional rights.

54. For a failure to train claim, Plaintiffs must show (1) the training policy and procedures were inadequate; (2) the City was deliberately indifferent in adopting its training

policy and procedures; and (3) the inadequate training policy and procedures directly caused the constitutional violation.

55. The City of Mission and its policymaker, Chief Cesar Torres, have been aware of the Mission jail's culture of violence, excessive use of force, lack of medical care, and lack of observation. Yet despite being aware of these deficiencies, Chief Torres continued with the same training policies and practices and has not implemented.

56. With deliberate indifference to the rights of citizens, Defendant City of Mission failed to provide adequate training to its officers on the use of excessive, identifying disabled persons in crisis, providing timely medical care, observation and monitoring, supervising employees and proper staffing of the jail.

57. Defendant City of Mission was aware that deprivation of the constitutional rights of citizens was likely a result from its lack of training and the failure to train.

58. As such, Defendant City of Mission was deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights.

59. Failure to train and/or appropriately modify training constituted official Defendant City of Mission policies, practices, or customs.

60. Defendant City of Mission's failure to train and/or modify training was behind the acts and omissions that caused Rogelio Gonzalez's severe injuries.

61. As a direct and proximate result of Mission's acts and omissions, Rogelio Gonzalez suffered injuries, experienced pain, mental anguish and suffering - in the past and in the future.

62. As a direct and proximate result of the acts and omissions described herein, Rogelio Gonzalez suffered compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

63. Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

### Count 3: Violation of Title II of the Americans With Disabilities Act of 1990 (42 U.S.C. 12131, et seq.) and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794, et seq.)

64. Plaintiffs bring claims against the City of Mission for violations of Title II of the Americans with Disabilities Act and the Rehabilitation Act.

65. The City of Mission has been, and currently is, a recipient of federal funds.

66. Both the ADA and Rehabilitation Act protect detainees with disabilities in jails from discrimination based on their disability.

67. To establish a claim under either of these act, Plaintiffs must show (1) they are a qualified individual under the ADA; (2) they are excluded or denied benefits of services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against and (3) the denial or discrimination is by reason of the disability.

68. The definition of qualified individual is defined broadly under the ADA.

69. The City of Mission has an obligation to provide modifications to their policies, procedures and practices even if not requested if they know or should know that a detainee is disabled and needs a modification.

70. The operation of the jail comprises services, programs, or activities of the City of Mission for purposes of these acts.

71. The City of Mission intentionally discriminated against Plaintiffs because of their mental and physical disabilities by failing to provide medications timely, by failing to modify observation and monitoring requirements, by failing to remove disabled individuals from the general population, and by failing to use proper techniques in handling detainees with disabilities.

72. The discrimination resulted in Rogelio's suffering significant injuries, worsening of their medical condition, and death.

73. The City of Mission's pervasive history of failing to properly care for detainees with physical and mental disabilities further corroborates the City's discrimination of Plaintiffs on the basis of their disability.

74. Rogelio was a qualified individual under the ADA as he had multiple physical impairments which limited one or more of his major life activities, including major bodily functions.

75. The Mission Police Department and jail were aware that Rogelio was disabled.

76. Despite this knowledge, the City of Mission discriminated against him under the meaning of the ADA and the Rehabilitation Act, by failing to accommodate his disabilities and by failing to conduct observations at shorter intervals.

77. The City of Mission refused to reasonably modify its policies, practices, or procedures to ensure Rogelio's access to the facilities, services, programs, or activities of the Jail by reasonably accommodating his known disabilities.

78. As a result of this discrimination based on his disability, the City of Mission caused Rogelio to suffer more severe injuries, pain and suffering.

## DEMAND FOR JURY TRIAL

79. Plaintiffs demand a jury trial as to all causes of action.

## PRAYER FOR RELIEF

80. WHEREFORE, Plaintiffs, Aida Gonzalez, individually and as Next Friend of Rogelio Gonzalez, prays for judgment against Defendant as follows:

81. As to Count I, a money judgment against Defendant City of Mission for compensatory, special and punitive damages together with costs, reasonable expert expenses, attorneys' fees under 42 U.S.C. § 1988, prejudgment interest, costs of suit, medical expenses in past and future, pain and suffering in the past and future, mental anguish in the past and future, and such other and further relief to which Plaintiffs are justly entitled, whether at law or in equity.

82. As to Count II, a money judgment against Defendant City of Mission for compensatory and special damages as well as costs, reasonable expert expenses, attorneys' fees under 42 U.S.C. § 1988, prejudgment interest, costs of suit, medical expenses in past and future, pain and suffering in the past and future, mental anguish in the past and future, and such other and further relief to which Plaintiffs are justly entitled, whether at law or in equity.

83. As to Count III, a money judgment against Defendant City of Mission for compensatory and special damages as well as costs, reasonable expert expenses, attorneys' fees under 42 U.S.C. 1988, prejudgment interest, costs of suit, medical expenses in past and future, pain and suffering in the past and future, mental anguish in

the past and future, and such other and further relief to which Plaintiffs are justly entitled, whether at law or in equity.

84. Plaintiffs pray for such other and further relief, at law or in equity, to which they may show themselves justly entitled.

Respectfully submitted,

**RUIZ LAW FIRM, P.L.L.C.**
118 W. Pecan Blvd.
McAllen, Texas 78501
Telephone:   (956) 259-8200
Telecopier:   (956) 259-8203

         */s/ Mauro F. Ruiz*
Mauro F. Ruiz
State Bar No. 24007960
Federal ID. 23774
**eFile ONLY:** admin@mruizlaw.com
mruiz@mruizlaw.com

OF COUNSEL:
**RUIZ LAW FIRM, P.L.L.C.**
118 West Pecan Blvd.
McAllen, Texas 78501
Telephone:   (956) 259-8200
Telecopier:   (956) 259-8203